# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAWN T. KARNS, ) | |
| f/k/a DAWN TRACY DERR. ) | |
|  ) | |
| **Plaintiff,** ) | |
|  ) | **CIVIL ACTION** |
| v. ) | |
|  ) | No. 15-9241-JWL |
| CAROLYN W. COLVIN, ) | |
| **Acting Commissioner of Social Security,** ) | |
|  ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding the Administrative Law Judge (ALJ) did not adequately consider Plaintiff's work history, alleged onset date, and treatment history in light of the characteristics of trigeminal neuralgia, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this decision.

**I.    Background**

Plaintiff applied for DIB, alleging disability beginning October 1, 2003. (R. 16, 162). On August 20, 2013, Plaintiff filed a memorandum with the ALJ in which she requested an on-the-record decision in this case and amended her onset date of disability to January 1, 2012. (R. 127). She subsequently exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She claims that the ALJ erred in his evaluation of the credibility of her allegations of symptoms resulting from her impairments and also erred in weighing the medical source opinions because he did not recognize Plaintiff's amended alleged onset date--resulting in an erroneous finding that Plaintiff performed "significant work activity during the relevant period" (R. 18)--he relied on evidence unrelated to her trigeminal neuralgia to discount medical source opinions related to that impairment, and he did not specify the weight accorded to, or provide good reasons to discount, the opinions of Plaintiff's treating physicians, Dr. Chilton or Dr. Rosenberg.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ did not adequately consider Plaintiff's work history, alleged onset date, and treatment history in light of the characteristics of trigeminal neuralgia.  Because a proper consideration of the characteristics of trigeminal neuralgia might affect the way the ALJ views Plaintiff's allegation of symptoms, the Commissioner must revisit the issue of credibility on remand.

## III.    Discussion

As the ALJ found, Plaintiff was born on October 20, 1975.  (R. 26, finding no. 7). Her first surgery to address trigeminal neuralgia was an "open skull surgery for

4

microvascular decompression on January 24, 1991," when she was fifteen years old. (R. 22).

Social Security earnings records show that Plaintiff had earnings in 1990 through 1992 when she was approximately fourteen to seventeen years old, although she did not make sufficient earnings to obtain any qualifying quarters during that period. (R. 175). Her first qualifying quarter for Social Security coverage occurred in 1996 when she was twenty or twenty-one. Id. From 1998 through 2012 Plaintiff had sufficient earnings to provide sixty continuous qualifying quarters of Social Security coverage. (R. 176).

As the ALJ recognized in his decision, Plaintiff's application for benefits alleges disability beginning October 1, 2003 when Plaintiff was twenty-seven years old, which coincides roughly with her final open skull surgery in October 2003, and which involved a "total division of the trigeminal nerve." (R. 16 (disability onset), 22 (open skull surgery for total division of trigeminal nerve), 26 (27 years old on alleged onset date)). The ALJ listed all of Plaintiff's reported wages on or after her original alleged onset date:

> she received wages in 2003 totaling $16,429.86; in 2004 totaling $18,065.44; in 2005 totaling $23,013.50; in 2006 totaling 23,050.70; in 2007 totaling 20,781.86; in 2008 totaling 21,990.40; in 2009 totaling 22,494.24; in 2010 totaling $19,305.07; in 2011 totaling $16,103.15; and in 2012 totaling $5,480.94.

(R. 18). But, as Plaintiff argues in her Social Security Brief, the ALJ did not acknowledge in the decision at issue here that Plaintiff had amended her alleged onset date. (Pl. Br. 12). This oversight is compounded, in the court's view, by the fact that at the hearing the ALJ asked the vocational expert (VE) to testify regarding past relevant

work "going back, if possible, 15 years from her alleged onset date in October of 2003." (R. 67). The VE did so (R. 68), and the ALJ's hypothetical questioning of the VE was based on that onset date. (R. 69-75). It was only thereafter that Plaintiff's counsel reminded the ALJ that Plaintiff had amended her onset date to January 1, 2012. Id. at 75.

Nevertheless, the ALJ did not amend his questioning of the VE, there is no mention of the amended onset date in the decision, and the ALJ discussed all of Plaintiff's earnings and found that "the above earnings reflect the performance of significant work activity during the relevant period. (R. 18) (emphasis added); see also, 20 C.F.R. § 404.1520(a)(4)(i) (noting step one of the sequential evaluation process requires finding no disability during periods where a claimant is "doing substantial gainful activity"). Then, after considering "evidence of work activity after the alleged onset date of disability," id., the ALJ noted "there is clear evidence of significant work activity after October 1, 2003," id., but found that "it is not necessary to determine whether that work constitutes disqualifying substantial gainful activity (SGA) because, even assuming that it was not SGA, there exists a valid basis for denying claimant's application, as explained in the remainder of this decision." Id. at 18-19. Finally, the ALJ found that Plaintiff "has not been under a disability . . . from October 1, 2003, through the date of this decision." (R. 27) (finding no. 11) (bolding omitted).

In her Response Brief, the Commissioner argues that any error in failing to discuss the amended onset date and in noting work activity from 2003 until 2012 is harmless because the ALJ did not deny Plaintiff's claim on the basis of substantial gainful activity

during the alleged period of disability, but found that the record does not support disability at any time, even after the amended alleged onset date, and relied on Plaintiff's work activity merely to show that Plaintiff had worked for many years despite trigeminal neuralgia, and by extension should be able to continue to do so.  (Comm'r Br. 4, n.2).

Both the decision at issue and the Commissioner's argument on their face seem to be reasonable, but they do not consider that trigeminal neuralgia can become progressive and that the clinical course of that progression is that the attacks of pain often worsen over time.  The Commissioner acknowledges that trigeminal neuralgia "is a chronic pain condition that affects the fifth cranial nerve in the head and causes extreme, sporadic sudden burning or shock-like facial pain that lasts from a few seconds to two minutes per episode."  (Comm'r Br. 1, n.1) (citing Trigeminal Neuralgia Fact Sheet, National Institute of Neurological Disorders and Stroke, http://www.ninds.nih.gov/disorders/ trigeminal_neuralgia/detail_trigeminal_neuralgia.htm) (emphasis added).  The National Institutes of Health fact sheet upon which the Commissioner relies also notes that "[t]hese attacks can occur in quick succession, in volleys lasting as long as two hours." Trigeminal Neuralgia Fact Sheet, http://www.ninds.nih.gov/disorders/trigeminal_ neuralgia/detail_trigeminal_neuralgia.htm (last visited: January 11, 2017).  The fact sheet also list three modes of treatment for trigeminal neuralgia, medication, surgery, and complementary approaches.  Id.

The record evidence reveals, and the decision agrees that Plaintiff had various forms of each of these modes of treatment in the 21 years between 1991 and 2012.  The

decision recognizes at least five surgeries to aid Plaintiff's condition between 1991 and 2003, culminating with a total division of the trigeminal nerve in October 2003. (R. 22). It also acknowledges that Plaintiff began reporting renewed and increasing symptoms beginning in 2011 despite the total division of the nerve, and that in August 2012 Plaintiff underwent another surgery, a nucleotractotomy, in an attempt to resolve her renewed symptoms. (R. 22-23). The ALJ treats this history as evidence of Plaintiff's questionable credibility in claiming renewed and increasing symptoms, and there is evidentiary support for that treatment. However, the Trigeminal Neuralgia fact sheet reveals that the history of Plaintiff's progression is a reasonable and even an expected progression of the disease.

> Trigeminal neuralgia:
>
> is typified by attacks that stop for a period of time and then return, but the condition can be progressive. The attacks often worsen over time, with fewer and shorter pain-free periods before they recur. Eventually, the pain-free intervals disappear and medication to control the pain becomes less effective. The disorder is not fatal, but can be debilitating. Due to the intensity of the pain, some individuals may avoid daily activities or social contacts because they fear an impending attack.

Trigeminal Neuralgia Fact Sheet, http://www.ninds.nih.gov/disorders/trigeminal_ neuralgia/detail_trigeminal_neuralgia.htm (last visited: January 11, 2017). The fact sheet notes that after surgery trigeminal neuralgia "will often return even if the procedure is initially successful." Id. The fact sheet notes that balloon compression surgery (a procedure used on Plaintiff twice) usually provides pain relief lasting only one to two years. Microvascular decompression (described by the ALJ as open skull surgery), to various extents and with various results, was performed on Plaintiff thrice, January 1991,

August 2002, and October 2003. (R. 22). The fact sheet reveals that microvascular decompression (MVD) surgery is the most invasive of the surgeries, "offers the lowest probability that pain will return," and "[a]bout half of individuals undergoing MVD for TN will experience recurrent pain within 12 to 15 years." Trigeminal Neuralgia Fact Sheet, http://www.ninds.nih.gov/disorders/trigeminal_neuralgia/detail_trigeminal_ neuralgia.htm (last visited: January 11, 2017). The fact sheet reveals that a neurectomy may be performed on one branch of the nerve located in the face, but that nerve may grow back. Id. This was apparently the last surgery tried on Plaintiff in August 2012, and Plaintiff reported the return of pain just a few weeks later. Moreover, the fact sheet suggests why the neurectomy may have been the last surgery attempted on Plaintiff-- "[w]ith neurectomy, there is risk of creating anesthesia dolorosa" (a combination of surface numbness and deep burning pain). Id.

     Despite the characteristics and expectable course of trigeminal neuralgia as revealed by the National Institutes of Health fact sheet, and despite the course of treatment, testimony of Plaintiff, and opinions of Plaintiff's treating physicians, all of which tend to reflect progression, treatment, and results consistent with the fact sheet, the decision does not reflect consideration of Plaintiff's allegations, the history, or the medical opinions in light of the characteristics of trigeminal neuralgia. Moreover, the decision does not affirmatively reflect that the ALJ was even aware of the basic facts regarding trigeminal neuralgia. The fact that Plaintiff apparently had an extensive period of remission from the severe pain of trigeminal neuralgia after her 2003 surgery until

2011 is consistent with the characteristics of trigeminal neuralgia, and the ALJ's failure to recognize that fact and failure to recognize Plaintiff's amended onset date further suggests that the ALJ was not aware of (and did not consider the evidence in light of) the characteristics of trigeminal neuralgia.

The court may not substitute its view of the record for that of the ALJ, and it does not suggest that Plaintiff must be found disabled on remand. Nevertheless, remand is necessary for the Commissioner to evaluate the record evidence in light of the characteristics of trigeminal neuralgia and to explain her decision in light thereof.

Finally, although Plaintiff argues that this case should be remanded for an immediate award of benefits, she provides no citation to the standards permitting such a course, or argument why it is appropriate in this case. Lacking such argument or citation, the court cannot find the evidence necessarily requires award of benefits, and it remands only for a proper consideration in light of the characteristics of trigeminal neuralgia.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 12th day of January 2017, at Kansas City, Kansas.

                                                  s:/ John W. Lungstrum
                                                  **John W. Lungstrum**
                                                  **United States District Judge**